## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JORGE TORRES, for himself and on behalf of a class of similarly situated workers | : : : | **AMENDED OPINION** |
| Plaintiff, | : | |
| v. | : | Civ. No. 15-05770 (WHW)(CLW) |
| | : | |
| INNOVATE LOGISTICS, LLC, MATTHEW KIM, and "Anonymous Managers 1-5" (names being fictitious), | : : : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

Plaintiff Jorge Torres moves this Court for a default judgment to him under Fed. R. Civ. P. 55(b)(2) as to Defendants Innovate Logistics, LLC ("Innovate") and Matthew Kim. ECF No. 55. The lawsuit stems from Mr. Torres' employment as a truck driver for Defendant Innovate and its principal Defendant Matthew Kim. The Amended Complaint alleges that Defendants deducted various amount from Mr. Torres's pay in violation of a lease agreement, the Motor Carrier Act, and Truth-in-Leasing Regulations. Additionally, the Amended Complaint includes causes of action for common law conversion, violations of the Fair Labor Standards Act, and the New Jersey Wage and Hour Law. After a year-and-a-half of litigation, Defendant Innovate's counsel moved to withdraw in November 2016. Defendant Innovate has had six months to obtain new counsel and has failed to do so. On April 25, 2017 the Clerk of Court entered default as to Innovate and Matthew Kim. Plaintiff now moves for a default judgment. Defendants have failed to plead or otherwise defend the lawsuit. Decided without oral argument under Fed. R. Civ. P. 78, Plaintiff's motion is granted.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Jorge Torres is a resident of Philadelphia, PA, who owns a truck used by Defendants in the course of performing interstate trucking operations for nearly six months in 2014. Am. Compl., ECF No. 19 ¶ 10. Defendant Innovate Logistics, LLC is a New Jersey company engaged in the interstate freight delivery business. *Id.* ¶ 13. Defendant Matthew Kim is the owner and chief executive officer of Innovate. *Id.* ¶ 14. Innovate is registered with the Federal Motor Carrier Safety Administration ("FMCSA"), *id.* ¶ 20, and can be identified by United States Department of Transportation ("USDOT") # 2439445 and Motor Carrier # MC841-467. *Id.* ¶ 21. As a condition of securing authorization to engage in interstate freight operations, Innovate had to agree to comply with Truth-in-Leasing ("TIL") regulations, which require that an interstate carrier enter into a written lease with each of the owner-operators whose equipment it uses in its operations. *Id.* ¶¶ 22–24. Plaintiff Jorge Torres entered into an agreement with Defendant Innovate on or about February 19, 2014 for the purpose of allowing Defendants to use his truck and driving services in the course of performing their interstate trucking operations (the "Lease Agreement" or the "Agreement"). Torres Decl. ¶ 3; Ex. A. Mr. Torres worked for Innovate under the Agreement for approximately 22 weeks between February 2014 and July 2014. Torres Decl., ¶ 2.

The Lease Agreement specified certain deductions from Plaintiff's compensation that Defendants were permitted to take. Torres Decl., Ex. A. Innovate however deducted various sums from Mr. Torres's pay for workers' compensation, lease, escrow, and storage, Torres Decl., ¶ 18; *id.* Ex. B, which were not authorized by the Agreement, Torres Decl., ¶¶ 11-14; *Id.* Ex. A. On top of these deductions, Innovate required Mr. Torres to pay their dispatcher $100 every week. Torres Decl., ¶ 8. This dispatcher payment was also not specified in the Agreement. Torres

Decl.,¶ 15, Ex. A. Mr. Torres states that he complained to Mr. Kim about having to make the

dispatcher payments, but Mr. Kim disregarded his complaint. *Id.* ¶ 10.

During the course of Mr. Torres' employment, Innovate provided him with weekly

Driver Statements in lieu of paystubs. *Id.* ¶ 12. Mr. Torres has submitted to the Court eight

examples of Driver Statements issued by Innovate, each of which reflects the alleged deductions.

Torres Decl., Ex. B. Based on the Driver Statements, Mr. Torres contends that he is owed

$13,706 in damages for improper deductions. ECF No. 55-1 ¶¶ 13–17.

According to Mr. Torres, Defendant Kim was not only the owner and CEO of Innovate,

but he was also the sole manager and supervisor during Mr. Torres's employment. Torres Decl., ¶

33.  Mr. Kim was exclusively responsible for personnel matters, operational decisions, and

Innovate policy determinations during the time of Mr. Torres' employment in 2014. Torres

Decl., ¶ 33. Despite the fact that Innovate and Mr. Kim maintained the right to control Mr.

Torres' full-time work, Innovate classified Plaintiff as an independent contractor. ECF No. 19 ¶

48; Torres Decl., ¶¶ 21–27. Mr. Torres contends that Innovate misclassified him and failed to

pay him the federal minimum wage for all of his work. Torres Decl., ¶¶ 16–17. Of the eight

Driver Statements submitted by Plaintiff, three reflect that he was paid less than the federal

minimum wage during the statement period. *See* Torres Decl., Exs. B–C. Based on his Driver

Statements, Plaintiff calculates minimum wage damages of $960.09. Torres Decl., ¶ 36(b).

On January 30, 2015, Jorge Torres and former co-Plaintiff Luis Rivera filed their

Complaint in the Superior Court of New Jersey. ECF No. 1. Defendants removed the matter to

this Court on July 27, 2015. *Id.* On November 18, 2015 Defendant appeared by counsel,

answered, and served counterclaims against Plaintiff Torres. ECF No. 11. Plaintiff filed an

Amended Complaint adding co-Plaintiff Santos Velez on March 8, 2016. ECF No. 19.

The amended class action complaint alleges that Defendants deducted various amounts from Mr. Torres and other workers' pay in violation of lease agreements between Innovate and its truck drivers. *Id.* ¶¶ 109–10, 118–19. Plaintiff contends that these unlawful deductions violated the Motor Carrier Act, its associated Truth-in-Leasing Regulations, and constitute common law conversion. *Id.* The Amended Complaint also alleges that Innovate failed to pay Mr. Torres and other similarly situated workers in accordance with the Fair Labor Standards Act (the "FLSA") and the New Jersey Wage and Hour Law. *Id.* ¶¶ 120–23.

On November 1, 2016, Defendant Innovate's counsel abruptly moved to withdraw. ECF No. 34. Innovate did not respond to its counsel's motion and the motion was granted by Magistrate Judge Waldor on November 28, 2016. ECF No. 41. On the same day, in open court and with Defendant Kim present, the magistrate judge ordered Innovate to obtain new counsel within thirty days. During the status conference, Plaintiffs Luis Rivera and Santos Velez also voluntarily dismissed their claims.

On January 9, 2017, Defendant Kim again appeared before Magistrate Judge Waldor and informed the Court that Defendant Innovate was appearing without counsel. Mr. Kim asked for additional time for Innovate to obtain counsel and Plaintiff did not oppose. ECF No. 55-1 at 13. Magistrate Judge Waldor granted Innovate thirty additional days to obtain counsel, but warned that it risked default and having judgment entered against it should it fail to do so. At a telephone conference on February 10, 2017, Defendant Innovate again advised the Court that it did not have counsel. *Id.* It refused to provide assurances that it would ever obtain new counsel.

On April 25, 2017, the Clerk of Court entered default as to Defendants Innovate and Kim for failure to plead or otherwise defend. ECF No. 54. On May 12, 2017, Plaintiffs filed this motion for Default Judgment under Fed. R. Civ. P. 55(b)(2). Defendants have not responded.

## STANDARD FOR DEFAULT JUDGMENT

When evaluating a motion for default judgment under Fed. R. Civ. P. 55, courts in the Third Circuit consider three factors: (1) whether there is prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). A court must treat "the factual allegations in a complaint, other than those as to damages . . . as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). A court must also make "an independent inquiry into whether the unchallenged facts constitute a legitimate cause of action" and "must make an independent determination" regarding questions of law. *See Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-1581, 2007 WL 1674485, at *4 (D.N.J. June 8, 2007) (citations omitted). Similarly, a court does not accept as true allegations pertaining to the amount of damages, and may employ various methods to ascertain the amount of damages due. While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a hearing is unnecessary "as long as [the court] ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I.    Default Judgment is Appropriate

This action is based on Defendants' alleged violation of TIL regulations and the FLSA, and Mr. Kim's alleged common law conversion.

A private cause of action exists to enforce the TIL via the Motor Carrier Act, 49 U.S.C. § 14704(a). *See e.g.*, See *Owner-Operator Indep. Drivers Ass'n v. New Prime, Inc.*, 192 F.3d 778, 785 (8th Cir. 1999); *Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co.*, 632 F.3d 1111,

1113 (9th Cir. 2011); *Port Drivers Fed'n 18, Inc. v. All Saints Express, Inc.*, 757 F. Supp. 2d 443,

448 (D.N.J. 2010). Under TIL regulations, any deduction from a diver's pay must be clearly set

forth in the lease agreement. 49 C.F.R. § 376.12(h); *see All Saints Express*, 757 F. Supp. 2d at

451. A motor carrier like Innovate is liable under the TIL for the actual damages occasioned by

its failure to comply with a TIL-regulated equipment lease. *Schultz v. A & C Trucking I, LIE*,

2011 U.S. Dist. LEXIS 30900 (D. Or. Mar. 23, 2011) (finding that defendant breached the lease

agreement by failing to pay all the compensation mandated by the agreement and awarding

plaintiff actual damages and attorneys' fees). Here Innovate deducted various sums from Mr.

Torres' pay—for "workers' compensation, lease, escrow, and storage"—not specified in his

lease agreement with Innovate. Torres Decl., ¶ 8; *Id.* at Ex. B. Additionally, Innovate required

Mr. Torres to pay their dispatcher $100 every week, which amounted to an additional deduction

to his pay. These unchallenged facts constitute a legitimate cause of action.

Mr. Torres' cause of action against Defendant Kim for conversion is related to his TIL

claim against Innovate. The common-law tort of conversion is defined as the "intentional

exercise of dominion or control over a chattel which so seriously interferes with the right of

another to control it that the actor may justly be required to pay the other the full value of the

chattel." *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 454 (App. Div.), *certif. denied*, 200

N.J. 506 (2009) (quoting Restatement (Second) of Torts § 222A(1) (1965)). In this case, Mr.

Torres claims that Defendant Kim knowingly and intentionally took improper deductions from

identifiable monies that belong to Mr. Torres as reflected on the Driver Statements issued by Mr.

Kim. Torres Decl., ¶¶ 11–14, 8. Plaintiff further contends that Mr. Kim continued to deduct this

money even after Mr. Torres told him it was illegal. *Id.* ¶ 10. New Jersey recognizes that

corporate officers can be held liable for conversion where the converted property is used for the

benefit of the corporation. *See Charles Bloom & Co. v. Echo Jewelers*, 279 N.J. Super. 372, 382 (App.Div.1995). Because Plaintiff has sufficiently pled that Defendant Kim intentionally exercised dominion over Plaintiff's property to his or Innovate's benefit, Mr. Torres has established a legitimate cause of action for conversion. *See Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 431-32 (App. Div. 2011), *certif. denied*, 210 N.J. 478 (2012).

Finally, Plaintiff charges Defendants for unpaid wages and liquidated damages under the FLSA. ECF No. 19 ¶¶ 120–21. Mr. Torres argues that he was an employee of Innovate under the FLSA and is therefore entitled to minimum wages for his work. ECF No. 55-1 at 22. To determine whether Plaintiff was properly classified by Defendants, the Court looks to the overall employment relationship between Mr. Torres and Innovate with a focus on six factors: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; (6) whether the service rendered is an integral part of the alleged employer's business. *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

Mr. Torres' declaration affirms that Innovate and Mr. Kim had total control over his work activities, including where he reported, what he did, how work was completed, and what policies he had to follow, Torres Decl., ¶ 21. Additionally, Mr. Torres was paid set amounts determined by Innovate, *id.* ¶ 22; Mr. Torres worked exclusively, and more than 50 hours per week for Innovate, *id.* ¶ 25; and performed work integral to Innovate's core business functions, *id.* ¶ 26. Plaintiff has therefore established a legitimate case that his work is covered by the FLSA.

Having determined that Plaintiff's unchallenged facts establish legitimate causes of action, the Court reviews the *Chamberlain* factors to assess whether default judgment is appropriate. Plaintiff will suffer prejudice if default is denied because he has already waited almost three years to be paid wages owed to him by Defendants. Defendants have not presented any facts or arguments to suggest they have litigable defenses. Though it is not clear if Defendants' failure to litigate is the result of willful or bad faith conduct, Innovate has failed to retain representation in the six months since its counsel withdrew and Mr. Kim, as its principal, has not complied with repeated orders that Innovate find counsel. *See Sync Labs LLC v. Fusion Mfg.*, 2014 U.S. Dist. LEXIS 79187, *8-9, 2014 WL 2601907 (D.N.J. June 11, 2014). Consequently, the Court finds that default judgment is appropriate.

## II.     The Amount of Damages Is Satisfactorily Established

Plaintiff seeks damages for payroll deductions in violation of the Motor Carrier Act ($13,706); payroll deductions that constitute common-law conversion ($13,706); violations of the FLSA ($960.09); liquidated damages under the FLSA ($960.09); and prejudgment interest for the improper deductions and the FLSA claim ($1,587.62 calculated at 10.16% and running from the period of May 1, 2016 to April 3, 2017). See ECF No. 55-1 at 15–34. Additionally, Plaintiff seeks attorney fees and costs under the TIL and the FLSA ($73,504.75 for attorney fees and $1,368.09 for costs). The Court has reviewed Plaintiff's submissions and concludes that the damages calculations are accurate, and the attorney fees and costs request is reasonable. *See* Torres Decl., Ex. C (damages calculations); ECF No. 55-7, Tykulsker Decl., Ex. E (description of counsel's time and costs).

## CONCLUSION

Plaintiff's motion for default judgment is granted. Judgment is entered against

Defendants severally in the total amount of $17,213.80. Additionally, Plaintiff is entitled to

$73,504.75 for attorney fees and $1,368.09 for costs. An appropriate order follows.

DATE: 23 June 2017

_____

William H. Walls
Senior United States District Court Judge